I think we've got some usable chairs here for the first cases, but we'll do the best we can. The first case for argument is 17-1368, VernetX v. Mangrove. Mr. Norquist. Good morning, Your Honors. May it please the Court. This Court should set aside the Board's decisions for at least two independent reasons. First, regardless of how appellees construe CAYUCCI, it does not anticipate the claims. Second, the Board erred by joining Time Party Apple to these proceedings. If time permits, I would also like to address the real party in interest and discovery issues. If the Board erred by joining Apple, you don't argue that Mangrove was improper, right? Your Honor, that goes to our discovery argument. It is our belief— No, forget the real party in interest. Just assume Mangrove is its own entity and Apple is not the real party in interest behind Mangrove for purposes of my question. So Mangrove was therefore a properly filed petitioner, correct? Your Honor, respectfully, we disagree. I said assume the real party in interest. Your Honor, but I think the issue goes to that Mangrove—it's our belief that Mangrove was working with RPX here, and as Your Honor knows, that RPX filed petitions working with Apple. So we do believe— But that's the real party in interest argument, isn't it? It is, but Your Honor, they're connected. And before the Board— In that case, why couldn't they have proceeded? In this IPR, Apple introduced no new arguments in this IPR that weren't introduced by Mangrove. So even if Apple is improperly joined, I don't understand why the result is the whole IPR goes away, if I don't agree with you that there's anybody else behind Mangrove. I think the reason here is simple, Your Honor, because Apple's involvement was more than just taking the backseat here. But it doesn't matter, because Mangrove made the same arguments. So they had a right to have their arguments resolved by the Board. Your Honor, they certainly had the right, but again, what happened here, if you look at the record, what happened here was after Apple was joined to these proceedings, and as this Court may recall, we actually moved for Mendamus right after the proceeding—when Apple was joined to the Mangrove proceedings, and this Court asked us to come back after the final decisions. And I think what you're getting to is what prejudice is there to us, and we believe we were prejudiced here, because— If Mangrove had a right, and there was no real party and interest issue, if Mangrove had a right to bring this, they had a right to have it resolved. And they aren't the ones who decided to join Apple, the PTO is. And so once Apple is joined, why should it taint a legitimate petitioner's right to have this petition resolved? Your Honor, obviously we're assuming this is a—the petition is legitimate, which we obviously disagree with. Yes, I've said so a hundred times. That's the basis of this hypothetical question. Sorry, Your Honor. So I think the issue here is, again, Vernetix was prejudiced when Apple was joined because Vernetix has a right not to have its patents challenged by a party such as Apple that's time-barred. But it doesn't have a right to have its patents not challenged by Mangrove, necessarily. But again, Your Honor— Is the only argument—is the only answer you have for prejudice that Apple was able to bring its resources to bear? Your Honor— I'm just trying to get an answer. I think we have a three-part argument. I think the first argument is Vernetix is prejudiced because it does not have—it has a right not to have its patents challenged by Apple, which is a time-barred party. Congress— That's kind of the—we're talking about what the harm was, what the prejudice was. Sure, and let me get— So that—whether they had a right or not is—can you just tell me the concrete prejudice that you are arguing— Your Honor, I can. So here, if you look at the record, Apple took over the proceedings, including communications, expert declarations, depositions, and oral hearing. Apple is presenting the oral argument today, not Mangrove. So your argument is that it's Apple's resources. That's the only prejudice that you face. Your Honor, I think the other prejudice, this court cannot ignore the whole purpose for enacting 315B. The whole purpose for— No, no, forget about that. We're talking about the prejudice. Sure, Your Honor, and I think what I'm— It's just the resources of Apple that you complain about. That's certainly one piece of it, Your Honor, and I think as the— What's the other piece? What other prejudice? So the other prejudice goes to the fact that under Section 315B, when Congress enacted Section 315B, it made sure it balanced the patent owner's right to acquire a title with also not having patents like Vernetix subject to multiple proceedings, serial petitioning, that also led to harassment. But that's what—I mean, that's what Joinder is. It avoids multiple proceedings, right? I mean, one proceeding, same issues. I mean, that's what Joinder is, right? You're not having to go in and defend different proceedings with additional costs individually. Your Honor, that is the normal case when Joinder—but when you have a time-barred party, Apple, join the proceedings, we believe that the statute does not allow such a party to take over the proceedings and move forward. As Amicus Bio and Pharma point out, that having— What if they hadn't taken it over? What if they just sat there quietly? Your Honor— And they would not be prejudice, right? Certainly, that would be a different case, but that's not what happened here, Your Honor. Here we had Apple take over the proceedings, and we believe—and to be clear, Your Honor, we don't believe there is a requirement for prejudice. We believe when Apple joined these proceedings, it was barred, and the statute—for example, the SAS case— So what—and you're not advocating a do-over? I mean, even if we were to agree with you that Apple was improper and we can't let this decision stand, so you would automatically win on everything because of this error? Your Honor, the way we look at it is we think these proceedings should be set aside. At a minimum, what this court should do is it should send it to the board so it can unwind the proceedings and untangle the proceedings because Apple's improper involvement has tainted the proceedings in ways that cannot be undone. Okay, can we move to then the merits of the proceedings here? We can, Your Honor, sure. All right. You've got—are there four issues here? There are four issues here, Your Honor. Okay. Yes. And just to get my head straight, we're only dealing with the 151 and the 135 here? That's right, Your Honor. Okay, so why don't you just talk to us about these four issues? Okay, sure. So with respect to the 151 patent, and that deals with the 1047 proceeding, there—even if you set aside the board's reliance on a new theory in its final decision, CAYUCCI simply does not disclose the claimed DNS proxy module. How do you pronounce it again? CAYUCCI. CAYUCCI, okay. It simply does not disclose the claimed DNS proxy module. For example, if you look at the 151 Claim 1, it recites a data processing device comprising a memory storing a DNS proxy module. It is the DNS proxy module and only the DNS proxy module that performs all the recited functions. Again, regardless of how appellees read CAYUCCI, we simply do not believe it discloses a DNS proxy module. I think it's undisputed at this point— You didn't think the board considered it in combination versus individually? So, Your Honor, I think I was going to go there next, which is that even if you look at the combination which appellees argue on appeal, we don't believe Apple or the appellees win here. And the reason is simple. The claims require a DNS proxy module that intercepts requests sent by a client. And as Your Honor is also aware, the board also appointed CAYUCCI's client-side proxy to the claimed client. So what's happening under their mapping is that you have the client-side proxy intercepting requests from itself. We just think there is no reading of CAYUCCI that is supported. And then also, CAYUCCI touts the separateness between its client and the client-side proxy. So for all of these reasons, we believe the board—appellees' argument, even if this court were to accept it, we don't believe the board actually applied a combination mapping in its final decision. The board actually only relied on the name server, which I believe is undisputed at this point, that that does not satisfy the DNS proxy module. If I were to agree with you on the technical argument that the DNS proxy module, for example, doesn't perform the function of forwarding the DNS request to a DNS function that returns an IP address of a non-secure computer, if I agreed with you that there's no anticipation, am I correct in understanding that there were separate obviousness-related arguments that were presented or made for the board originally on CAYUCCI and that they were not addressed by the board? So under SAS, this would go back as a vacate and remand for the board to address the separate obviousness arguments. Your Honor, the board's obviousness ruling, if you look at it, we believe it was tied to the anticipation findings. The board's obviousness argument is incomprehensible. I agree, Your Honor, and I think that— So we would send it back to have them actually make an obviousness determination because I can't make any sense of their— At a minimum, I think this court should remand, but I think the court should reverse for another reason, which is if we go to the secure server limitation of the claim, Judge Prost, that's the second issue with respect to the 151 patent. The board, again, the issue that we have here is with the board's decision, it's internally inconsistent. So if you look at— You mean because they refer to the origin server and the server-side proxy each in different places as performing functions that the secure server is required to perform by the claims? That's right, Your Honor. But how do I know that one of those doesn't actually possibly perform all of them? I agree with you that the board has made a mistake on that. I don't see how anyone could conclude otherwise, but I don't see how I can reverse and say, therefore, there's no anticipation. Simply because the board points out that various things do things doesn't mean there isn't something in there that does all of them. Your Honor, again, at a minimum, this court should remand, and we believe we're entitled to a reversal here. Again, we were faced by three Petitioners who— So I'll tell you, Your Honor, again, this court reviews the board's final decision. In the board's final decision, it mapped the server-side proxy to one limitation and the origin server to the other limitation. We think the board in this situation, when the decision is internally inconsistent— But those weren't the arguments that were made by the parties. The board made that mistake on its own. So why wouldn't we send it back for the board to address the arguments made by the parties? So to the extent, we believe the Petitioners here led the board to that error, and they should limit those consequences. Again, at a minimum, you should remand, but we think the reversal is warranted. And there's another reason why reversal is warranted, and that deals with the term client. And Judge Prost, this gets to the 151 patent, the third issue. Here, the board erred in construing the term client. It actually never provided the construction, especially when both parties were disputing the construction. And second, no reasonable— Sorry, please, go ahead. It seems to me, in the opinion, they just misunderstood the argument Brunettix was making. So again, even if we agree with you that their conclusion was misplaced, that warrants a remand, right? Again, Your Honor, certainly we think at a minimum, a remand is warranted. But if you look at the arguments that we presented on why Cayuchi's client-side proxy does not meet the limitations of the claim, we think if you look, starting with the 151 patent, it distinguishes between a client and a proxy. Cayuchi itself confirms that no reasonable reading of— You're asking us to make a fact-finding on appeal. We don't do that. You don't get a reversal out of this. And I think it's really a reach to keep beating us over the head trying to ask for one. This is your weakest argument. To me, the best argument you have on client is that the Board's opinion is confusing. It's not clear whether it was relying on Cayuchi's user agent, client-side proxy, or both for the client. That's your best argument, that it's confusing because it's not clear to me what they were doing. But that doesn't give you a reversal. So just stop asking for it. Fair enough, Your Honor. At a minimum, this Court should remand with respect to that limitation. And then finally, if we go to the 135 patent and the 1046 proceeding, Judge Prost, and I think that's what you were thinking of the four issues. That's the fourth merits issue that we have here today. Again, there, we believe the Board erred in construing the claimed term VPN, virtual private network. And there, the Board's construction ignored a clear and unambiguous disclaimer that even Apple argued for itself in this record. And as Your Honor is aware from the Cisco One opinion, the previous district court appeal, that's what Apple argued for. And here, there— I think we understand that. You're into your rebuttals. You might want to stop. Thank you, Your Honor. I'll save those. Thank you. Good morning. Good morning, and may it please the Court, Mark Fleming on behalf of Apple. I'll take my cue from the Court's questioning and focus on the merits. Of course, I'm happy to address anything the Court would like me to address. There were problems in the Board's opinion, right? I mean, just getting through and trying to understand what they did was kind of challenging. But at the end of the day, you can start with any one of these terms. But obviously, you're hearing we have some concerns. I'm happy to address them, Your Honor. And I'll go limitation by limitation based on the arguments Mr. Modi made. I mean, I think the way to understand what the Board was grappling with was that these claims, as presented by Vernetics, are very broad. And there were two possible mappings that we presented, either of which is sufficient for anticipation. The Board went through those at the beginning of its opinions, said Kiyoshi discloses them, and then responded to the various arguments that Vernetics was making, all of which are confusing. But when you lay out, when you read the Board's opinion, they all start with Patton owner argues this, Patton owner argues that, and explain the responses. So let's start, for instance, with DNS proxy module. There there was the combination which Mangrove and Apple put forward in the petition, which is that the CHTTP name server and the client-side proxy together perform all the functions of the DNS proxy module. And I don't think there was any argument, either before the Board or in the opening brief, that that's not the case. That if you look at the two of them together, they do all the things that DNS proxy module does. And what about their analysis is they perform all four functions, the point that Judge Moore was making in the question of his friend? Well, I think the only response that he had is this argument about interception, that somehow the client-side proxy can't intercept a message or a request that's been sent by the client-side proxy. That is doubly waived. That was not made to the Board, and it's not in the blue brief. It comes up for the first time on page nine of the reply brief, and that was the only argument Mr. Modi offered this morning for the DNS proxy module under the correct mapping. And I think there's no question that the Board considered and relied on the combination mapping that we put forward. And the idea as presented in the brief, so we didn't hear it this morning, that Fernetics didn't have an opportunity to respond to it. I'm confused. Let's just start with secure server. Does the Board not alternatively refer to the origin server and the server-side proxy as performing the various functions of the secure server under the claim? It does, Judge Moore, and that's because we argue that either one could satisfy that role. There are alternative possible mappings, and Fernetics hasn't denied it. But I'm confused. Is it your view that when you have a claim that requires a single server to perform multiple functions, that the other side can perform, that there can be anticipation by an embodiment where different devices perform those functions and not the same device? Well, with respect to the secure server... Is it your view of anticipation, this is a question, is it your view of anticipation that when you have a claim that requires a single device to perform multiple functions, that there can be anticipation when the reference has different devices performing those functions? Not if the claim actually requires that it be a single device, but that is not a construction that Fernetics urged on the Board, and it's not a finding the Board made. The claim articulates, does it not, that the secure server does each of these things? No, Your Honor. The DNS proxy module, as claimed, performs the four claim steps, and one of them is setting up, in claim 13, which is the only claim at issue in the litigation now, a secure channel between a client and a secure server. And we argued that the secure server could map either to the origin server in Kiyuchi or to the server-side proxy, and there is no dispute that either of those can do that. This is a form over substance argument as to the secure server. But that's not what the Board found. The Board found that sometimes it says the origin server does it, and other times they say the server-side proxy does things, and they alternate in a confusing way in the opinion, which makes it unclear to me, at least, whether there is, in their view, a single server that's performing the functions required by the claim. So I don't think there are any claimed functions required to be performed by the secure server that are in dispute. To answer the question, I think the right mapping... Isn't the Board required to map elements consistently for limitations? I hear they jump around. It's sloppy. It's not clear. It may well be that the Board could have written a clearer opinion. The question is, can we discern the reasoning of the Board? And with respect to secure server... But these are fact findings, and I'm uncomfortable replacing Board fact findings with my view of the fact findings. I don't think the Board is forbidden from making alternative findings, nor is this Court forbidden from affirming one alternative finding as long as it's supported by substantial evidence. And if one looks at A61, the Board says, a secure server, i.e. server-side proxy. The Vernetics does not deny that that finding, that the secure server is met by Kiyuchi's server-side proxy, is supported by substantial evidence. Again, this is a form over substance argument. We argue, both of them, that both the server-side proxy and the origin server can be the secure server. Okay, I'd like to move you to the joinder question. Of course, Your Honor. So, how is it that Apple is properly joined in this case? Aren't they time-barred from filing their own petition under 315B? If they had filed their own separate petition, yes. They did. Wait, wait. Yes. They did file their own separate petition, correct? Absolutely, yes. Yes, we did. And that petition is what was joined, correct? Correct. So, if they filed their own separate petition, and if you agree their own separate petition would have been barred by 315B, how is it that they're properly joined? The second sentence of 315B makes very clear that the one-year time bar does not apply to a request for joinder. A request for joinder, correct. Is a request for joinder the same thing as a petition under the statute? Well, I think, at most, the arguments that have been put before the Court show there may be some ambiguity on that point. And if there's ambiguity on that point, the tiebreaker is Chevron deference. The PTO has a duly promulgated rule that makes it very... Really? Wait, let me get this straight. You think that the PTO has the ability to make substantive legal determinations, and that we give them Chevron deference for them? This isn't a substantive legal determination, Your Honor. The question of the timeliness of a joinder or a petition is a key procedural point. This doesn't go to the patentability of any claim. You think, just to be clear, you think statutes of limitations are not substantive? You think those are just procedural? No, Your Honor, but this isn't a statute of limitations. This is a question of the timeliness of a motion for joinder, which is something the statute expressly gives the PTO... Well, wait. If this is about the timeliness of a motion for joinder, then it's not about the timeliness of a petition, because a motion for joinder is separate from a petition, according to the statute. They separately talk about them throughout the statute. Well, they are discussed, but the last sentence of 315B specifically says that the first sentence, which has the time limitation only applicable to petitions, does not apply in the case of a request for joinder. No, it doesn't say it doesn't apply in the case. Well, it doesn't apply to a request. It says it doesn't apply to a request for joinder. And if that meant... So why isn't that properly interpreted as you may file a request to join two properly filed petitions beyond the one-year period of time? The one-year period of time is not meant to affect your ability to file a request for joinder. It's only meant to affect your ability to file a petition. Why isn't that the most reasonable plain-language reading of the statute? Because that would make the second sentence a nullity because the first sentence already makes clear that the one-year time limitation only applies to a petition. The first sentence applies to a petition, the second to a motion for joinder. Motion for joinder itself is not time-barred, is it? There's nothing that bars the motion for joinder. No, the only timeliness limitation for the motion was the one that the PTO set in its regulations, which is that it be filed within a month after the decision on institution, which Apple plainly complied with. And the question whether there's a separate application of a one-year time bar in the case where Apple filed both of them within the time period required for joinder, that's something we think is addressed by the second sentence of 315B, which is it doesn't apply to a request for joinder, including the petition that's filed with it. And I think the most you get to... Perhaps you said earlier that perhaps there are two reasonable interpretations of Section 315B. And you said, and therefore, if there is, we should give Chevron deference to the PTO's interpretation. Is that right? I don't think their interpretation is reasonable, but if the court thinks it's reasonable, then the tiebreaker is Chevron deference. Do you think it's possible that you're just... Do you really think you can stand there and say this other interpretation is not reasonable, you as a person, as divorced from you as the litigator for Apple at the moment? Because it's really surprising to me that you could say their interpretation is not reasonable because, you know, it's quite frankly my interpretation. So it's surprising to me that you would stand here and tell me that you personally do not believe that it's at all reasonable. I obviously don't mean to suggest, Your Honor, that you are being unreasonable if that is your view of things. I mean, I'd point out, I think, five judges of this court in other decisions, which are not binding, I recognize, but in the Akade's panel opinion... So how do we get to where you want to go if we're not buying into the Chevron deference? Well, I don't know... Well, okay, then I think ultimately it is the colloquy that Your Honor's had with my colleague, which is that there is no harm here and no remedy that this court would impose that would be meaningful. See, and I think you might be on to something here. Let me spin it out for you, because I'm proposing an extraordinarily narrow way to resolve this case that allows you to win. All right? So I'm just going to put it out there so you don't assume that this is a hostile question because I've asked you some hostile questions. I want you to relax. It's not hostile. All right, so let me spin it out for you. What about this? What about there may well be cases in which there's prejudice? For example, suppose two petitions were not limited to the same issues and that the board ultimately concluded that Apple issues are the ones that ought to prevail in the petition and they either don't address the Mangrove issues or don't agree with them. Then we would potentially have prejudice, right? I think you could well, yes. Right, and so maybe the answer could be in a very narrow way that we don't have to reach whether Apple was properly joined in this case under the statute because we have two identical petitions and the board had an obligation to resolve Mangrove's petition either way and so we just treated it as having done that and thus there's no prejudice. I think the court could certainly rule that way and in fact that's why I tried to... Sorry. But then let's assume for sake of argument that we decide to remand this case. So does that foreclose Apple's participation on remand? Even if it did, I don't think a remand on this basis would serve any purpose because as Judge Moore's question or proposal suggested, the remand would simply be, even if you took Apple out of the proceeding entirely, board, please decide this case based on Mangrove's petition and Mangrove's evidence and Mangrove's arguments that you have already determined as a board are sufficient to carry the burden. I'm sorry. I think you misunderstand. I believe that Judge Prost's question may have meant to suggest what if we don't agree with you on, for example, the secure server or the client or any one of those other issues and if any of them require vacating and remanding on the merits, to what extent, if we don't reach this joinder issue, to what extent does Apple participate below? Like for example, would you be willing to agree not to participate and back out of the petition if it were vacated and remanded? Well, I mean, at this point... Do you understand? No, I do understand. The point is you're probably going to force us to decide the joinder issue because if we don't agree with you on the merits, it has to go back and so we probably have to set parameters as to whether Apple is allowed to participate if it goes back. Do you see where I am? I do understand the import of the question and I think if the parameters were to be the ones that Your Honor suggested where we can't go beyond the issues that Mangrove has petitioned on and we can't go beyond the discovery and the arguments that Mangrove has made, those limits were already in place. The board put them in place. It said that Apple could not raise any additional issues. It couldn't engage in any further discovery. It would be up to Mangrove to decide which attorneys presented at the hearing and it wasn't just Apple's attorney. Mangrove's attorney presented as well. I know, but what if we think the board's opinion is at a minimum incomprehensible in certain places vis-a-vis anticipation and what if we need to send it back and tell the board either clarify your opinion or go ahead and reach obviousness? See, the problem for me is what happens with Apple if we do that, if we're not going to reach the Joinder issue? If we don't reach Joinder, then theoretically we're just punting, kicking the can down the road so that because you guys would, you represent Apple, you'd continue to participate in the IPR at that point if we don't bar you from doing so and say the statute bars you from doing so and then it comes back up and the next panel has to decide whether you're a proponent or not. I think we would continue to participate but not in a way that is cognizable prejudice to Vernetics. Vernetics has no right to a particular adversary or a particular lawyer representing the adversary. The question is, I think as your question indicated, has there been some substantive change in the nature of the arguments or the evidence that the board relies on through the Joinder process? And the answer is clearly no. The board was very careful to manage this proceeding so that Apple's participation did not work any cognizable unfair prejudice to Vernetics. But they don't do that all the time. The bio brief was excellent, pointing out lots of examples where the board has gone a lot further in other cases than they've gone in your case in terms of allowing people to be combined with themselves when they were untimely raising new arguments and then joining the new arguments. The bio brief articulated and pointed us to a number of different cases that had a number of scenarios that went much further than yours in terms of would this create, those scenarios would in fact create prejudice. So the problem is if I have to decide the Joinder issue, I'm not just deciding it for your case where the board actually limited you to Mangrove's issues. I'm deciding it for all cases, including the ones where the board didn't limit Joinder of only identical issues, where it allowed new issues, new parties that are untimely to raise new issues, joined them in and then forced the patentee to deal with all the issues, even the ones not raised by the only timely filed petition. So what do I do about that? I could envision, Your Honor, writing an opinion that says we do not need to decide the merits of the Joinder challenge because even if Vernetics were correct, there has been no harm because the board was careful to manage these proceedings so that Apple's participation did not work any unfair prejudice, and so we leave the Joinder question for another day. And in this case, I just want to make sure I understand the facts. Did, and I think I do, did Apple utilize its involvement in this petition, in this IPR proceeding, to go back and try to ask the district court, for example, for a stay? I know the answer is no because I already looked at the docket, but I just want to discuss it with you to make sure I'm not overlooking any potential prejudice to a patentee if I do what you're suggesting because it's creative and I like creative, but I want to make sure, because for example, you do know, of course, that if IPR has been instituted and you're involved in it, you can ask the district court for a stay of a parallel litigation. That's not the kind of thing that's occurred here because that kind of gamesmanship could be a basis on which they could say there's prejudice to allow Apple to be involved in this petition because they're using it to thwart the district court case. I mean, there were requests for stay, but they didn't turn on Apple's participation in the proceeding. A request for a stay based on the fact that the board has invalidated claims at issue in litigation. But those stay requests weren't granted. No, no, they certainly were not. So as of now, there is no even arguable prejudice because they tried to, maybe Apple tried to use the petition as a basis, but it didn't result in a stay in the case. All efforts to stay either the trial that's on appeal in the third case this morning and the subsequent one. Do you understand what I'm saying? Because no district court's going to stay a district court litigation based on an IPR on a patent that the parties to the litigation are not necessarily involved in the IPR. Like if Apple weren't a party to the Mangrove IPR, district court wouldn't consider staying it. I'm not aware of any district courts that have stayed district court litigation simply because a patent ends up in an IPR if it's not one of, if it's not the party that's in the litigation. Are you aware of that? I must confess, I haven't researched that question. But I, you know, and there are also re-exams on these patents that have been stayed. So the number of different other proceedings going on. My concern about Joyter, as you can tell, is about prejudice, right? Of course, absolutely. If there's no prejudice in this case because the PTO is limited, I just want to make sure there's no ancillary or tangential prejudice. There is not, for the simple reason, as your Honor said, that none of these litigations were ever stayed. They went forward, they continued, they've gone to judgment, and that includes the follow-on litigation which is in briefing before this court now in the 855 case. Has the court said anything about whether or not in the hypothetical Joyter, which is not this case, whether or not the PTAB is permitted to allow a joining party to introduce issues beyond or other than were made in the original timely filed petition? I must confess, I don't know what the board has said in other cases. It's possible that it has said that, but if that is problematic, then those can be addressed in those cases, which are not before the court at this point. The regulation doesn't speak to that, right? It doesn't have any limitations. It doesn't speak to... No, the board's decision to join is, of course, discretionary, and the board could always deny it in that situation. Haven't they taken a case under advisement? You're not aware of what's going on in the PTAB about this issue? I can't say for sure that the board has never decided a case as Your Honor describes or isn't considering one. That may well happen, but if it does, then... Wait a minute, time out. Aren't you aware of the cases in the bio brief of pages 23 to 25? In some of those cases, didn't they allow issues to be joined that weren't part of the timely filed petition? I think that's probably correct, and if that is an error, if that is an error, Your Honor, then that will be presumably appealed to this court, but it's not an issue here. How would that be an error? Time out. How would it be an error? If JOINDER was proper in this case, the purpose behind JOINDER is to prevent untimely people from getting to participate. It's not to prevent issues from being heard by the PTO because anyone else can bring the issues. The purpose behind JOINDER, the one-year time bar, I should say, is to prevent people who had an interest, who had knowledge, but who chose not to come forward in a timely fashion, to prevent them from then getting the benefit of a second bite at the apple through IPR. But the purpose isn't issue preclusion because any third party can bring an IPR with the same exact issues. It's a party-related bar in 315B. It's not an issue-related bar. So what about this statute leads you to believe... I will tell you, I think there is nothing in this statute anywhere that gives me even the slightest concern that Congress thought JOINDER couldn't occur with different issues. I see nothing that prevents the PTO from joining two petitions that have totally different issues in them, if it so chooses. Do you see anything in the statute that gives congressional intent-type idea, anything in the statute anywhere that suggests JOINDER can only occur when the issues are the same? So we've come a long way from this case, but to answer your question, no, I don't think so. I don't either. I think one of the goals of the statute, at the very least, was to allow the board to take a second look and revisit issued patents, as the Supreme Court said in Quozo, and anything that allows the board to do that in the way that in its discretion it thinks is most effective through JOINDER, is appropriate. I think it's important to remember also on the other beginning of the question, which talked about the one-year time bar being to prevent certain parties from being able to file at all, that is not a goal that is pursued at all costs, and when the PTO filed its brief in the related mandamus docket before briefing in this appeal began, which is number 16-119, the PTO's brief at 12-13 says, it's not a legislative judgment that Congress pursues at all costs, and the patent owner's interest in quiet title is substantially diminished. I'm sorry, what are you reading from? I'm reading from the PTO's brief in opposing a stay when Vernetik's petition for mandamus in this case. And this is what kind of authority? Well, it's not authority. It's an argument that the PTO made for why, and just to answer the question, as to whether the goal of the one-year time bar provision is to prevent parties like Apple from participating. So I should defer to an argument the PTO made in another case regarding congressional intent behind the statute. It's not another case, Your Honor. It is this very case when Vernetik's was trying to get mandamus to the board's proceeding. And what this court pointed out, I'm not asking for deference. I'm just saying I think this is a correct understanding of what Congress was trying to do. Isn't the statute the correct understanding of what Congress was trying to do? Of course, but it's not... See, the statute has two sentences. One says there's a time bar for one year that applies to petitions. The other says it does not apply to requests for joinder. And in terms of putting them together, what the PTO explains, which I think is correct, is that the policy of making, of not allowing time-barred parties to participate in these proceedings gives way when the patent in question is already the subject of an ongoing IPR. And that was the only thing I was trying to get to. That is what the PTO is talking about in its brief to this court in the mandamus case. I think it's correct, and that's how you reconcile the two parts... But how does that sentence affect the issue? I mean, does that assume... Are we supposed to assume as a backdrop that the cases, that the issues are the same and the arguments are the same? How does that statement play if we're dealing with a case in which the joined party brought in all this new stuff? I don't think it necessarily affects that situation, but it's not the situation we have here, and that just shows that there's no... Just to be clear, when you say it doesn't affect that situation, you mean under your interpretation of the statute. I want to be very clear. Under your interpretation of the statute, the joined party could bring in totally separate arguments that were not raised in the timely file petition, and that those arguments could, under the PTO's authority, be joined to the properly filed petition and could form the entire basis for the resolution of the IPR, if that's the way the PTO went under the statute. That is your view, your interpretation of 315b. I think if you ask me as an academic question, I think that probably is the right interpretation of the statute, and it's at the very least a reasonable interpretation that the PTO's entitled to adopt. You don't need to decide that here by any means. In terms of having the time bar to begin with, if you're going to have a backdoor by which the same party that was barred could come back in at a later point just by a motion to poor joiner and then present the same arguments. Well, the idea is to make sure there aren't any serial challenges. There's a challenge by a timely party and then a separate challenge by an untimely party that exposes the patentee to multiple different proceedings, but it gives the board the discretion. It's not mandatory. The board wasn't required to join Apple here, but it gives them the discretion to join multiple proceedings into one so it has the benefit of all the arguments. It seems to me that after a point in time, then the parties that are time barred can find a way back into the proceeding, and that's what gives me a little bit of pause for your argument, especially the argument that you can come in and bring whole new issues. I think this is... There are reasonable policy arguments on both sides, I would say. I don't think either one is rendered... I don't need to argue that Vernetics' argument or the policy argument Your Honor articulated is unreasonable. I think that's what an agency which is tasked with making regulations expressly by Congress under this provision is entitled to decide, and there is no argument on Vernetics' side under Chevron Step 2 that the rule the PTO promulgated is somehow an unreasonable choice for an agency to make. It's certainly reasonable. It simply does what the PTO previously told this Court, which is it balances the interests of the patent holder against the interest in making sure that these patents are fairly reviewed and that patents that are invalid are permitted to us. Well, whether it's reasonable depends, doesn't it, on how we interpret 315B. Because if we interpret 315B as saying you can join outside of the one-year period, you can file a request for joinder, that a request for joinder is not limited to the one-year period, the same way the filing of a petition is, then the PTO's regulation, if that is the interpretation of the statute, isn't reasonable, correct? Because it's directly in conflict with the statute. I think if that's how you conclude the statute is read, that it can only be read the way Vernetics is arguing, then that's right. I mean, because then it's a Chevron Step 1 argument. Well, not that it can only be read, but that that is the plain language of the statute. If we conclude that's the plain language of the statute, then that's the end of it, right? Yes, but I think in so concluding, you would have to conclude that any other reading is unreasonable, that it can't be read that way. So the problem is, if we adopt your reading, though, it's the Pandora's box. I hate saying that out loud, because I hate even using those words. It's stupid, but it is because all of those other things that we just talked about, about joinder or on the table, there are no limitations placed on the PTO regarding the issues that can be allowed to be joined together. So the problem becomes, if your reading is the correct reading of the statute, then the PTO has discretion to join whole new issues that should be time barred by virtue of 315B, but aren't because suddenly there's a request for joinder. And those new issues are the ones that could resolve the whole case. And I just don't understand what the point of 315B's first sentence is any longer, if that can occur. So I think that that's why I was offering Your Honor the opportunity to not answer the question because of the way it was done in this case. There might be an easy reason why this is absolutely wrong, but just thinking out loud, is there a way to argue that the issue that is not present in this case about other issues being brought in by the untimely joint petitioner that would be tested under the abuse of discretion in C? I mean, all this joinder is is the ability of the director to at his discretion determine whether or not to join. Is it conceivable, this may be really awful, you know, not correct, but is it conceivable to say that we could test if we found objectionable or really unfairly prejudicial to a patent owner to allow new issues to be joined by an untimely party? Could that issue be tested under an abuse of discretion under C? As I stand here, it could be. I think one might have to sort of look at what the interplay is with the jurisdictional bar on preliminary review of preliminary procedural issues. But certainly if it implicated a time bar under the court's decision in WIFI 1, I think it probably would be reviewable. But again, that's not an argument they made. But just to be clear, based on everything you said to me before about your understanding of the statute, you wouldn't agree that it could be challenged that way, would you? Because you and I see this, I think, the statute the same way. I see no indication that Congress intended to put a subject matter limitation on the PTO's ability to join petitions related to the same patent. Do you see anything in the statute anywhere that suggests... No. Answering the question academically, Judge Moore, no. I don't see anything. I was assuming that the predicate of Chief Judge Bristow... So if Congress intended no limit on the issues that could be brought, and there appear to be none in here, and there's lots of good reasons to think there should be none, the PTO's argument, policy-based argument you raised for me, and the idea that Congress intended IPR is scared of bad patents, I can think of no policy things articulated by Congress in the adoption of the AIA which would justify such a limit, so it's hard for me to imagine under what authority we could conclude that's an abusive discretion. Do you have any thoughts on how we could get there? Well, I assume that if there were to be the kind of review that Chief Judge Prost was hypothesizing, assuming there's jurisdiction to do it, there would be some kind of analysis as to what factors the board had considered, what the level of prejudice to the patentee actually was, and if it was truly of a level where this court thought there should be some kind of remedy, then it would find an abusive discretion. But again, we're a long way from this particular case where there isn't even an argument of that. Can't we only find an abusive discretion if we believe Congress meant for them to have some limit? They're meant for there to be some limit on it? I'm sorry, I don't quite understand. Okay, forget it. You're way over your time, and it's mostly my fault, so I'll stop. I'm happy to address any other questions the court has. We didn't spend much time on the merits, and to the extent there's anything the court would like me to address, I'm happy to do it. Okay, thank you. Thank you very much, Your Honor. Thank you. Thank you, Your Honors. I'd actually like to start with the issue of prejudice. I think this court does need to address the 315B issue here, even if there's a remand. The reason is simple. Judge Moore, I think one of the things that is critical here is Apple actually submitted additional evidence and argument on top of Mangrove's, and you can find that at A1881-84 for the 135 petition. Did Apple ever request a stay in the proceedings? And that was going to be my next point, Judge Reyna. Stay of the district court proceedings, you were saying? In the IPR. In the agency proceedings. Did they request a stay of the agency proceedings? Yes. No, not a stay of the agency proceedings, but Apple did rely on these very same IPRs that Apple took over and prosecuted before the board to ask for a stay before the district court. So, Judge Moore, that goes back to your question on prejudice, but the fact that Apple submitted... But it could have prejudiced you, but it didn't, because the district court didn't grant the stay. Sure, Your Honor, but again, I wouldn't be surprised if Apple... Well, we'll get to the third case later, but the stays, the repeated requests for stays was not helpful. Absolutely, but I think the critical piece that I would like to reiterate is Apple did submit additional argument and evidence on top of Mangrove's, which is one of the reasons why there's prejudice here. And again, that's at A1881-84 for the 135 petition. But there's no statutory provision that prevents that from happening, right? I think it is the 315B and 315C, Your Honor. We believe Apple a time-barred party cannot join new issues to the proceedings. And going to the NIDAC case that my colleague mentioned, the NIDAC case actually, I think, helps us, not them. The statute doesn't say that, what you just said. It doesn't say that you cannot add new issues to the proceedings. Absolutely, Your Honor. It doesn't from a... You certainly can join properly filed petitions with different issues, but here, I think the problem we have is as the court pointed out in the NIDAC, this was a concurrence. The court said where there are new issues raised, which was the case here, Joiner very well would be time-barred and we think it is time-barred here for that very same reason. And just to... So the court has a site for the additional evidence for the 151 proceeding. It's at 837-54-59. So there was additional evidence and argument that was submitted by Apple on top of Mangarup's here. What is the... Just out of curiosity, what's the additional evidence or argument? So, Your Honor, it had to deal with... It dealt with printed publication issues for some of the references. But that's not an issue... That wasn't the basis at all of the board's conclusion. I mean, there was no relevance of that to the conclusion the board reached on anticipation. Certainly not on anticipation, but the obviousness findings dealt with the issue of whether those references are printed publications or not. So with respect to the obviousness findings, those references were very well in play. And as you know from the board's decision, they were in play. And I think the court doesn't need to go beyond these proceedings as to what Apple has been able to do. We have been battling with Apple for over seven or eight years. Apple filed interpartisan examination. They filed IPR petitions that were denied. Then they had entity NewBay. Their petitions were dismissed and RPX had Apple file petitions, where Apple had RPX file petitions, and now we have Mangarup. And I think my last point on this jointer issue is under Apple's reading of the statute, you could have a time-barred petitioner who petition has been rejected can publicly advertise and say here's a petition that you can file and then Apple could try to join that proceeding and take over. A party like Apple could join and take over that proceeding. We think this court needs to stop that practice and it needs to decide the 315B issue. And to the extent there is a remand, we would ask that the court allow for broad discovery based on our other issues to the extent there is remand. And then just one final point on the DNS box. You're back to the real party of interest. Right. My point is simple that to the extent there is a remand, the court should let us investigate the Mangarup and RPX connection. And then finally, on the DNS proxy module point that my colleague discussed, the board disclaimed any argument on the combination mapping that was at 86-87. The board relied on the name server as we've discussed. And the combination argument we did discuss down before the board and that's at 834-67. So for all these reasons, we think the board's decisions should be set aside unless the court has any other questions. Thank you. Thank you both sides and the case is submitted.